Debra L. Wabnik (dw-0944)
Stagg, Terenzi, Confusione & Wabnik, LLP
401 Franklin Avenue, Suite 300
Garden City, New York 11530
(516) 812-4504
dwabnik@stcwlaw.com

*Attorneys for Plaintiff*
*Shawn Garrett*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

SHAWN GARRETT,

                  Plaintiff,

    -against-

FRIENDS ACADEMY, INC., MARK SCHOEFFEL,
WILLIAM MORRIS, MARY ALICE KOLODNER,
DEBORAH SCHOMAN, ANDREA KELLY,
ANN MARIE TIDONA, and ROBIN WILPON
WACHTLER,

                  Defendants.

------------------------------------------------------------------------X

Docket No.:   2-18-cv-3081

**COMPLAINT**

**JURY TRIAL DEMANDED**

      Plaintiff Dr. Shawn Garrett ("Plaintiff") by and through her attorneys, Stagg, Terenzi,

Confusione & Wabnik, LLP, hereby complains of Defendants Friends Academy, Inc. ("Friends

Academy"), Mark Schoeffel ("Schoeffel"), William Morris ("Morris"), Mary Alice Kolodner

("Kolodner"), Deborah Schoman ("Schoman"), Andrea Kelly ("Kelly"), Ann Marie Tidona

("Tidona") and Robin Wilpon Wachtler ("Wachtler"), (collectively "Defendants"), upon

information and belief as follows:

### NATURE OF THE CASE

     1.    Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as

codified at 42 U.S.C. §§ 2000e-2000e-17, as amended ("Title VII"), the New York State Human

Rights Law, New York State Executive Law § 296, *et seq.* ("NYSHRL"), the New York State Labor Law ("NYLL"), and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), seeking damages to redress the injuries she suffered as a result of being sexually harassed, discriminated against on the basis of her gender, retaliated against by her employer, and not paid for hours she actually worked in violation of state and federal wage laws.

## JURISDICTION AND VENUE

2.      Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331 and 1343.

3.      The Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as it is a judicial district where a substantial part of the events or omissions giving rise to the claims occurred.

## PROCEDURAL PREREQUISITES

5.      Plaintiff filed charges of discrimination and retaliation upon which this Complaint is based with the Equal Employment Opportunities Commission (hereinafter "EEOC").

6.      Plaintiff received a Notice of Right to Sue from the EEOC dated February 28, 2018, with respect to the herein charges of discrimination.

7.      This action was commenced within ninety (90) days of receipt of said Notice.

## PARTIES

8.      At all times relevant, Plaintiff was and is a resident of the State of New York, County of Nassau.

9.      At all times relevant, Friends Academy was and is a not for profit incorporated under the laws of the State of Texas.

2

10.     At all times relevant, Friends Academy owned, operated and/or maintained an office located at 270 Duck Pond Road, Locust Valley, New York.

11.     At all times relevant, Friends Academy is a covered employer in the meaning of the FLSA and the NYLL and at all times relevant, employed Plaintiff and other similarly situated employees.

12.     At all times relevant, Plaintiff was an "employee" of Friends Academy within the meaning of Title VII, the ADA, and the NYSHRL, and thus afforded protection against sexual harassment, discrimination and retaliation.

13.     At all times relevant, Plaintiff was an "employee" of Friends Academy within the meaning of the FLSA and the NLL.

14.     At all times relevant, Schoeffel was employed by Friends Academy, holding the position of Upper School Principal.

15.     At all times relevant, Morris was employed by Friends Academy, holding the title of Head of School.

16.     At all times relevant, Kolodner was employed by Friends Academy, holding the title of Dean of Faculty.

17.     At all times relevant, Schoman was employed by Friends Academy, holding the title of Associate Head of School.

18.     At all times relevant, Kelly was employed by Friends Academy, replacing Morris in his position as Head of School.

19.     At all times relevant, Tidona was employed by Friends Academy, holding the title of Director of Finance.

3

20.     At all times relevant, Wachtler was Vice President of the Board of Trustees of Friends Academy.

**Background**

21.     Plaintiff was hired by Friends Academy as a full-time Upper School English teacher in August 2012.

22.     Plaintiff was well regarded by both her students and her peers, and in April 2014, she was promoted to Head of the English Department.  Although the title was not effective until August 2014, she immediately began assuming the duties of Department Head.

23.     In March 2015, Schoeffel interviewed for the position of Upper School Principal for Friends Academy.  During a group interview of Schoeffel by the Friends Academy Academic Council,  only women were present.  At the end of the session, Schoeffel said to Plaintiff, "I wonder when I'm going to meet some men around here."

24.     After the meeting, Plaintiff reported the comment on an anonymous online feedback form.  Shortly thereafter, she verbally reported the comment to Kolodner.  Nonetheless, Schoeffel got the job.  He started in approximately July 2015.

25.     In July 2015, Plaintiff had her first professional meeting with Schoeffel to discuss a parent complaint about another teacher.  Schoeffel looked Plaintiff up and down in a way that made Plaintiff uncomfortable, and commented on the skirt she was wearing.

26.     Throughout the 2015/16 school year, Schoeffel regularly undermined Plaintiff's position as Head of the English Department by excluding her from department issues, including the discipline of English teacher Rick Sullivan ("Sullivan") for his repeated policy violations and efforts to sabotage departmental curricula and administration.

4

27.     On October 12 and 29, 2015, Plaintiff gave Kolodner, Schoeffel, and Schoeffel's administrative assistant Cathy Philapakos ("Philapakos") verbal notification of an upcoming surgery for the serious health condition of endometrial hypoplasis, including dates of pre-surgical and post-surgical appointments.  On October 19th, Plaintiff also informed Schoeffel in writing of the details of her surgery and the need for class coverage.  The information provided was sufficient to identify the situation as Family Medical Leave Act ("FMLA") qualifying.  He replied, "We will review this," but never did anything further.

28.     On November 12, 2015, Plaintiff had the hypoplasia surgery.  Individual mid-semester student qualitative comments were due on November 13th for grades 11 and 12. Plaintiff could not meet the deadline for one of her grade 12 classes due to her illness and the surgery.  Schoeffel was aware that Plaintiff's doctor had said her recovery would take two weeks, but he did not accommodate or investigate her FMLA needs.

29.     Between November 16, 2015 and December 9, 2015, Plaintiff had separate meetings with Morris and Kolodner in which she detailed Schoeffel's mistreatment of her, of Philapakos and of another administrative staff member, Sharon LaPointe.  Morris and Kolodner did not take any action on Plaintiff's complaints.

30.     Schoeffel met with Plaintiff on December 11, 2015, after receiving a complaint about the late submission of mid-semester comments for one of her 12th grade classes from a Board of Trustees member, Wachtler.  Schoeffel yelled at, cursed at, mocked, and demeaned Plaintiff, directly threatened her job both as Head of English and as a teacher, and questioned her fitness for her chosen profession of more than 25 years.  He never spoke to male employees in this way.

31.     In this same meeting, Schoeffel removed Plaintiff without cause from the Integrity Project, a project which she had been entrusted and paid in part by Friends Academy since 2014 to lead.

32.     Saying that the Head of School and others had done "a disservice" to her, "to Friends Academy's students, and to the other English teachers" by appointing her as Head of her department, Schoeffel informed Plaintiff that she needed to announce her decision to step away from the position as soon as possible.  Plaintiff complied out of fear of further harassment.

33.     After this meeting, in conversations with others, Schoeffel characterized Plaintiff's sudden, unexplained dismissal from the Integrity Project, as well as her removal as Head of English, as Plaintiff's decisions.

34.     On January 10, 2016, Plaintiff made a formal, written internal complaint to Morris about gender-based harassment from Schoeffel.  Plaintiff detailed how she had been singled out and discriminated against by Schoeffel.  Plaintiff met with Morris that same day.  She expressed that Schoeffel had a problem with women, including her, and that he displayed a worrying level of emotional volatility around women.

35.     Rather than investigate and address Plaintiff's claims himself, Morris set up a meeting between Plaintiff and Schoeffel for January 15, 2016.  Plaintiff was forced to directly confront Schoeffel.  Morris sat virtually silent and did nothing, even as Schoeffel exhibited dismissive, confrontational behavior, threatening Plaintiff's job and expressing contempt for her qualifications and fitness as an educator.

36.     Schoeffel continued his harassment and Plaintiff continued to complain to Morris and Kolodner throughout the Spring, asking for an investigation.  She heard nothing in response.

37.     On May 25, 2016, Sullivan missed a class.  Plaintiff informed him that she had covered the class, and she intended to inform Schoeffel.  Sullivan responded, among other discriminatory and demeaning things, "Everybody knows you only got the job [as Head of English] because you have nice tits."  That same day, Plaintiff sent an email to Schoeffel and Morris regarding Sullivan's pattern of absences necessitating class coverage on her part.  She reiterated complaints she had made previously regarding Sullivan's criticisms of her and frequent outbursts.

38.     Schoeffel replied attacking Plaintiff for failing to report Sullivan's behavior sooner.  That afternoon, Plaintiff informed Schoeffel about Sullivan's "tits" comment.  Once Plaintiff said no one else was present for Sullivan's comments about Plaintiff's "tits," Schoeffel refused to address it.  Instead of assisting Plaintiff, he reprimanded her for "overreacting."  No action was taken against Sullivan.

39.     Having heard nothing from any of the various personnel on her continued complaints of harassment and discrimination, Plaintiff emailed Morris on June 9, 2016 requesting again that her complaints be investigated.  She noted that she had not received any evaluations in the school year.  Schoeffel had observed the other English teachers, in most cases multiple times.  In fact, Plaintiff never received any evaluations after March 18, 2014, although the Friends Academy handbook provides that teachers are to be evaluated through observations.

40.     The next morning, Schoeffel appeared unannounced in an agitated state outside a department meeting Plaintiff was conducting on another part of the campus.  He escorted her to his office for a suddenly-mandatory one-on-one meeting about setting 2016/17 departmental teaching schedules.  Plaintiff asked for Kolodner to be present.  Schoeffel behaved in a volatile, irrational manner, again something he never did with male teachers. At the end of the meeting,

Plaintiff again stated to both Schoeffel and Kolodner that she considered Schoeffel's treatment of and behavior toward her to constitute discrimination and harassment, and asked for it to stop.

41.     Later that day, Plaintiff once again asked Morris to investigate her claim of harassment and discrimination against Schoeffel, as he had done absolutely nothing in response to her formal request six months earlier. Plaintiff had made it clear that she would resign as Head of English on the explicit condition that Morris formally acknowledge that Schoeffel had forced her out, investigate her claim, and that she be protected from ongoing harassment by Schoeffel. Because this never happened and Schoeffel's harassment continued unchecked, Plaintiff withdrew her resignation. She again asked for an investigation. Morris warned Plaintiff that they would investigate her instead of Schoeffel, but ultimately agreed to email the English Department that Plaintiff would stay on as its Head.

42.     Friends Academy later stated it would hire an outside law firm to conduct an investigation.

43.     In late June 2016, Wachtler met with Kelly, who had replaced Morris as Head of the School. She made false statements and damaging claims, attacking Plaintiff's teaching ability and integrity. At the time of her meeting with Kelly, Wachtler had no children in the school. Her only intention in making the false claims was to try to help Friends Academy avoid liability for the actions of Morris, Schoeffel, and Sullivan in the 2015/16 school year.

44.     That summer, Friends Academy removed Plaintiff from the summer curriculum grant to develop a senior seminar in Comedy, a further professional and economic loss.

**Plaintiff is Retaliated Against for Filing with the EEOC**

45.     On July 5, 2016, Plaintiff filed an EEOC charge. She withdrew the charge after finally hearing from the third-party investigator hired by Friends Academy, hoping her

complaints would actually be addressed.  In the beginning of the 2016/17 school year, she was interviewed for a total of 7 hours over 2 days.  Plaintiff and Christine Kulke, Head of History, had asked that Philapakos be interviewed as she was also familiar with Schoeffel's discriminatory behavior, but it was not done.

46.    Plaintiff had her first banding meeting on September 26, 2016 and subsequently prepared her banding self-evaluation document, the first draft of which she submitted on October 16, 2016.  "Banding" is similar to tenure, and is accompanied by a $1,000 increase in salary. This process should take six weeks to complete after submission of the self-evaluation document. Friends Academy extended the process by requiring Plaintiff to draft and redraft her self-evaluation documents, far and above what other teachers had to do.  Friends Academy did not even form a banding committee until June 2017. At a June 9, 2017 meeting, the committee made plans to move forward over the summer and into the 2017-18 academic year.  But by that time, Plaintiff had been illegally fired.

47.    Kolodner refused to pay grants Plaintiff had applied for (which the administration had approved) and misrepresented English Department matters.

48.    Plaintiff asked to meet with Kelly in September 2016 to discuss her complaints against Schoeffel.  Kelly refused.

49.    On December 2, 2016, Kelly met with Plaintiff for the first time and removed Plaintiff as Head of English.  Kelly said Plaintiff had to say the demotion was Plaintiff's idea, but Plaintiff refused.

50.    On December 7, 2016, Kelly called a department meeting for the following day. Kelly announced Plaintiff's demotion at the meeting held at the end of the school day, right before parent-teacher conferences, and on Plaintiff's birthday.

9

51.     Adding insult to injury, Kelly emailed all English Department teachers except Plaintiff on December 19, 2016 about the next Department Head.

52.     Geoffrey Nelson ("Nelson"), a male, was made the new Department Head.  He was far less qualified than Plaintiff.  At the time of his promotion, Nelson had only a Bachelor's degree in History.  He did not have any degree in literature.  By contrast, Plaintiff had a doctorate in drama/literature.

53.     Kelly then tried to retroactively justify Plaintiff's demotion.  She conjured up performance issues and threatened Plaintiff's job.

54.     Plaintiff responded verbally and in writing, but Friends Academy refused to investigate.  Plaintiff went back to the EEOC and filed a second charge.  Thereafter, Kelly requested a meeting with Plaintiff to discuss transitioning the department, and scheduled an annual goals meeting for Plaintiff.  After Plaintiff requested Quaker-in-Residence John Scardina's attendance at the goals meeting to protect her against further discrimination and retaliation, Kelly withdrew her offer to meet.  Instead, Kelly proposed placing Plaintiff on a performance plan.  Although Plaintiff agreed to participate, she considered it further retaliation and let Kelly know.  Only then did Kelly withdraw the plan.

55.     The following month, Tidona informed Plaintiff that the investigation had finally closed and found no evidence of wrongdoing by Schoeffel.  Tidona asked Plaintiff to report any future incidents of harassment directly to her.  Although numerous others could have been Plaintiff's supervisor, Friends Academy did not remove Schoeffel as her supervisor, so that they would continue to have daily contact.

56.    In March 2017, Kelly sent Plaintiff a contract for the upcoming school year, including in her cover letter false performance-related allegations that Kelly had never discussed with Plaintiff, and threatening Plaintiff's employment.

57.    The EEOC did not investigate Plaintiff's second charge, and on April 12, 2017 it issued a Dismissal and Notice of Right to Sue.

58.    Plaintiff filed a third charge for retaliation on April 17, 2017.

59.    In an email to Kolodner on May 4, 2017, Plaintiff asked that a plan be put in place so that she was not subjected to further harassment by Schoeffel.  Nothing was done.

60.    Plaintiff reiterated Schoeffel's retaliation at her annual end-of-year goals meeting. Tidona claimed she investigated even though she did not meet with Plaintiff, and instead of offering any advice or protections, concluded "We are going to have to agree to disagree."

61.    Kelly continued to retaliate against Plaintiff, writing her up in June 2017 for failing to get "grade reports" to students, even though Plaintiff was on jury duty and a "grade report" was a voluntary service that Plaintiff provided to give her students an idea of how they were doing before taking the final exam.  When the parents of one of the students met with Plaintiff about not receiving the grade report, Plaintiff explained that the student had not emailed Plaintiff or asked for extra help as instructed.  Instead of supporting Plaintiff, Kelly attacked her for her response.  After Plaintiff pushed back, Kelly retaliated and terminated Plaintiff's employment.

62.    Plaintiff's son was a 6th grade student at Friends Academy at the time of her unlawful termination.  His tuition had been significantly reduced as part of Plaintiff's compensation.  Friends Academy offered to extend the tuition reduction for only one year, and only if Plaintiff signed an agreement not to bring claims such as those brought in this action,

even though it knew Plaintiff had filed a claim with the EEOC.  Since Plaintiff's son would then have to transfer to a different school in his last year of middle school, and Plaintiff would not be able to assert her rights in this lawsuit, she could not sign the agreement.  Plaintiff's son was thus forced to leave his friends and the staff he had been with for seven years, and start at a new school with little to no notice.

63.     Plaintiff's teaching position was filled by Jozeph Herceg, who was a less qualified male.   He had a Master's degree, whereas Plaintiff has a Doctorate.  He also had far less teaching experience than Plaintiff.

### AS A FIRST CLAIM
### FOR RETALIATION UNDER TITLE VII
#### (Against Friends Academy Only)

64.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

65.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

66.     Plaintiff complained on numerous occasions, both in writing and verbally, about Defendants' discriminatory treatment.

67.     Plaintiff filed three separate EEOC claims against Friends Academy.

68.     Friends Academy was aware of all three EEOC claims.

69.     Within one year of the first charge and six weeks of her third charge, Plaintiff was subject to numerous adverse actions, in that Defendants *inter alia,* demoted Plaintiff from her

position as Head of English, took away the Integrity Project, took her off the Comedy project, delayed her banding process, gave her unwarranted negative feedback and reviews, tried to get her on an unnecessary improvement plan, and terminated her.

70.     Friends Academy engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e, *et seq.*, by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

71.     By engaging in the foregoing conduct, Friends Academy acted with malice and/or reckless disregard for Plaintiff's rights under Title VII.

72.     As a result of Friends Academy's retaliation, Plaintiff suffered severe emotional distress, loss of enjoyment of life, lost wages and other damages.

73.     Plaintiff was damaged in an amount that exceeds any jurisdictional requirements of the Court, which will be determined at trial, and Plaintiff is entitled to punitive damages and attorneys' fees and costs.

## AS A SECOND CLAIM
## FOR RETALIATION
## <u>UNDER THE NEW YORK STATE EXECUTIVE LAW</u>
### (Against All Defendants)

74.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

75.     New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

13

76.     Plaintiff complained to Defendants about their discriminatory treatment of her on numerous occasions, both in writing and verbally.

77.     Because Plaintiff complained about Defendants' discriminatory treatment, Defendants retaliated against her by, among other things, creating a hostile work environment, making offensive comments, deliberately mischaracterizing her work performance, demoting her, removing her from projects, excluding her, and treating her in a disparate fashion as compared to those who did not complain about the discrimination.

78.     Defendants engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of her opposition to the unlawful employment practices of Defendants.

79.     Defendants' conduct as alleged herein constitute violations of New York State Human Rights Law § 296.

80.     By engaging in the foregoing conduct, Defendants acted with malice and/or reckless disregard for Plaintiff's rights under New York State Human Rights Law § 296.

81.     As a result of Defendants' retaliation, Plaintiff suffered severe emotional distress, loss of enjoyment of life, lost wages and other damages.

### AS A THIRD CLAIM
### FOR HOSTILE AND ABUSIVE WORKING
### ENVIRONMENT IN VIOLATION OF TITLE VII
#### (Against Friends Academy Only)

82.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

83.     Plaintiff is a member of a protected class in that she is female.

84.     Plaintiff was subjected to inappropriate comments about women, treated differently than her male colleagues, and targeted by Defendants, all because she was female.

14

85.     Plaintiff suffered adverse action as a result of her complaints about the sexual harassment and discrimination, in that Defendants *inter alia* demoted Plaintiff from her position as Head of English, took away the Integrity Project, took her off the Comedy project, delayed her banding process, gave her unwarranted negative feedback and reviews, tried to get her on an unnecessary improvement plan, and terminated her.

86.     The position of Head of English was given to a less qualified male.

87.     Plaintiff was replaced by a less qualified male in her teaching position.

88.     The conduct of Friends Academy as alleged herein subjected Plaintiff to a hostile work environment in violation of Title VII.

89.     By engaging in the foregoing conduct, Friends Academy acted with malice and/or with reckless disregard for Plaintiff's rights under Title VII.

90.     As a result of the harassment and hostile working environment, Plaintiff suffered severe emotional distress, loss of enjoyment of life, lost wages and other damages.

91.     Plaintiff was damaged in an amount that exceeds any jurisdictional requirements of the Court, which will be determined at trial, and Plaintiff is entitled to punitive damages and attorneys' fees and costs.

## AS A FOURTH CLAIM
## FOR HOSTILE AND ABUSIVE WORKING ENVIRONMENT
## <u>UNDER THE NEW YORK STATE EXECUTIVE LAW</u>
### (Against All Defendants)

92.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

93.     Executive Law § 296 provides that it is unlawful discriminatory practice for an employer to discriminate against an employee because of her gender.

94.     Plaintiff is a member of a protected class in that she is female.

95.     Plaintiff was subjected to inappropriate comments about women, treated differently than her male colleagues, and targeted by Defendants, all because she was female.

96.     Plaintiff suffered adverse action as a result of her complaints about the sexual harassment and discrimination, in that Defendants *inter alia* demoted Plaintiff from her position as Head of English, took away the Integrity Project, took her off the Comedy project, delayed her banding process, gave her unwarranted negative feedback and reviews, tried to get her on an unnecessary improvement plan, and terminated her.

97.     The position of Head of English was given to a less qualified male.

98.     Plaintiff was replaced by a less qualified male in her teaching position.

99.     The conduct of Defendants, as alleged above, constitutes sexual harassment and sex discrimination in violation of Executive Law § 296 by, among other things, creating a hostile work environment for Plaintiff and discriminating against Plaintiff based on her gender.

100.    As a result of the harassment and hostile working environment, Plaintiff suffered severe emotional distress, loss of enjoyment of life, lost wages and other damages.

101.    Plaintiff was damaged in an amount that exceeds any jurisdictional requirements of the Court, which will be determined at trial, and Plaintiff is entitled to attorneys' fees and costs.

## AS A FIFTH CLAIM
## FOR AIDING AND ABETTING
## DISCRIMINATION UNDER THE NEW YORK STATE EXECUTIVE LAW
### (Against All Defendants)

102.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

103.   New York State Executive Law § 296(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel, or coerce the doing of any acts forbidden under this article, or attempt to do so."

104.   Defendants violated New York State Executive Law §296(6) because their actions as detailed above aided and abetted the discriminatory, harassing and unlawful conduct committed against Plaintiff.

105.   As a result of Defendants' actions, Plaintiff suffered severe emotional distress, loss of enjoyment of life, lost wages and other damages.

### AS A SIXTH CLAIM
### FOR VIOLATIONS OF THE FEDERAL LABOR LAWS
### (Against Friends Academy)

106.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

107.   Plaintiff worked on grants for the Integrity Initiative and for course development for a new senior elective on Comedy and Literature.

108.   Funds were allocated to the grants.

109.   Plaintiff supplied documentation demonstrating that the work was done.

110.   Defendants refused to pay Plaintiff for work performed on the grants.

111.   As a result of Friends Academy's failure to pay wages earned and due to Plaintiff, Friends Academy deprived Plaintiff of full and timely payment under the law in violation of the Federal Labor Laws.

112.   Pursuant to the Federal labor laws, Plaintiff seeks damages in the amount of the unpaid wages earned and due, liquidated damages, prejudgment interest, penalties, and attorneys' fees and costs.

### AS A SEVENTH CLAIM
### <u>FOR VIOLATIONS OF THE STATE LABOR LAWS</u>
### (Against Friends Academy)

113.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

114.     Plaintiff worked on grants for the Integrity Initiative and for course development for a new senior elective on Comedy and Literature.

115.     Funds were allocated to the grants.

116.     Plaintiff supplied documentation demonstrating that the work was done.

117.     Friends Academy refused to pay Plaintiff for work performed on the grants.

118.     As a result of Friends Academy's failure to pay wages earned and due to Plaintiff, Friends Academy deprived Plaintiff of full and timely payment under the law in violation of the New York Labor Laws.

119.     Pursuant to NYLL § 198(1) and 650, *et seq.,* Plaintiff seeks damages in the amount of the unpaid wages earned and due, liquidated damages, prejudgment interest, penalties, and attorneys' fees and costs.

### AS AN EIGHTH CLAIM
### FOR INTENTIONAL
### <u>INFLICTION OF EMOTIONAL DISTRESS</u>
### (Against All Defendants)

120.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

121.     Defendants deliberately and purposefully harassed and discriminated against Plaintiff because of her sex.

122.     Defendants purposely attempted to upset, humiliate and embarrass Plaintiff to force her to end her career as a teacher.

123.    For malicious and illegal reasons, Defendants attempted to end the teaching career of Plaintiff.

124.    As described above, the conduct of Defendants was outrageous and must not be tolerated in a civilized society.

125.    As a result of that conduct, Plaintiff suffered extreme emotional distress and physical illnesses and manifestations as a result of that emotional distress.

## JURY DEMAND

126.    Plaintiff demands a trial by jury on all issues in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants:

A.    Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, and the New York State Executive Law, in that Defendants discriminated against her based on her gender, retaliated against her for objecting to gender discrimination and sexual harassment, and aided and abetted such discrimination and retaliation;

B.    Awarding damages to Plaintiff resulting from Defendants' unlawful actions and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.    Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D.    Awarding Plaintiff unpaid wages;

E.    Awarding Plaintiff punitive damages;

F.    Awarding Plaintiff costs and liquidated damages;

19

G.    Awarding Plaintiff attorneys' fees, and expenses incurred in the prosecution of this action; and

H.    Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper.

Dated: Garden City, New York
       May 23, 2018

Stagg, Terenzi, Confusione & Wabnik, LLP


By: /s/Debra L. Wabnik
       Debra L. Wabnik (dw-0944)
       *Attorneys for Plaintiff*
       *Shawn Garrett*
401 Franklin Avenue, Suite 300
Garden City, New York 11530
(516) 812-4504