UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SHAWN GARRETT,

        Plaintiff,

    v.

FRIENDS ACADEMY, *et al*,

        Defendants.

Case No. 2:18-cv-03081-JMA-AYS

---

## DEFENDANTS' ANSWER TO COMPLAINT AND DEFENSES

Defendants Friends Academy, Mark Schoeffel, William Morris, Mary Alice Kolodner, Deborah Schoman, Andrea Kelly, Ann Marie Tidona and Robin Wilpon Wachtler (collectively, "Defendants"), by and through their counsel, Venable LLP, hereby answer the corresponding paragraphs set forth in the Complaint in the above-captioned matter.  To the extent there is an ambiguity in this Answer, any allegation in the Complaint not specifically admitted below is hereby expressly denied.

### NATURE OF THE CASE[1]

1.     Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified at 42 U.S.C. §§ 2000e-2000e-I7, as amended ("Title VII"), the New York State Human Rights Law, New York State Executive Law § 296, et seq. ("NYSHRL"), the New York State Labor Law ("NYLL"), and the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), seeking damages to redress the injuries she suffered as a result of being sexually harassed, discriminated against on the basis of her gender, retaliated against by her employer, and not paid for hours she actually worked in violation of state and federal wage laws.

**RESPONSE:** Defendants admit that Plaintiff Shawn Garrett ("Plaintiff" or "Garrett")

seeks damages for alleged violations of Title VII of the Civil Rights Act of 1964, as codified at 42

---

[1] Defendants utilize the headings as worded in the Complaint for the sake of reference and convenience only. Defendants do not admit or concede any allegations or characterizations in the wording of any Complaint headings unless specifically stated otherwise in this Answer.

U.S.C. §§ 2000e-2000e-I7, as amended ("Title VII"), the New York State Human Rights Law, New York State Executive Law § 296, et seq. ("NYSHRL"), the New York State Labor Law ("NYLL"), and the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), but Defendants deny any allegation that they violated Title VII, the NYSHRL, the NYLL and the FLSA, or that they engaged in any other wrongdoing whatsoever.

## JURISDICTION AND VENUE

2.      Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331 and 1343.

**RESPONSE:** Defendants admit the allegations in paragraph 2 of the Complaint.

3.      The Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

**RESPONSE:** Defendants admit the allegations in paragraph 3 of the Complaint.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as it is a judicial district where a substantial part of the events or omissions giving rise to the claims occurred.

**RESPONSE:** Defendants admit the allegations in paragraph 4 of the Complaint.

## PROCEDURAL PREQUISITES

5.      Plaintiff filed charges of discrimination and retaliation upon which this Complaint is based with the Equal Employment Opportunities Commission (hereinafter "EEOC").

**RESPONSE:** Defendants admit the allegations in paragraph 5 of the Complaint.

6.      Plaintiff received a Notice of Right to Sue from the EEOC dated February 28, 2018, with respect to the herein charges of discrimination.

**RESPONSE:** Defendants admit that Plaintiff received a Notice of Right to Sue from the EEOC, dated February 28, 2018, but deny to the extent that Plaintiff seeks to assert that the Notice of Right to Sue dated February 28, 2018 was issued with respect to her first and second EEOC Charges.

7.      This action was commenced within ninety (90) days of receipt of said Notice.

**RESPONSE:** Defendants admit that this action was commenced within ninety (90) days of Plaintiff's receipt of a Notice of Right to Sue with respect to her third EEOC Charge, dated February 28, 2018, but deny that this action was commenced within ninety (90) days of Plaintiff's receipt of any such notices as they related to her first and second EEOC Charges.

## PARTIES

8.      At all times relevant, Plaintiff was and is a resident of the State of New York, County of Nassau.

**RESPONSE:** Defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 8 of the Complaint.

9.      At all times relevant, Friends Academy was and is a not for profit incorporated under the laws of the State of Texas.

**RESPONSE:** Defendants admit the allegations in paragraph 9 of the Complaint, except Defendants deny that Friends Academy is incorporated under the laws of the State of Texas.

10.     At all times relevant, Friends Academy owned, operated and/or maintained an office located at 270 Duck Pond Road, Locust Valley, New York.

**RESPONSE:** Defendants admit the allegations in paragraph 10 of the Complaint.

11.     At all times relevant, Friends Academy is a covered employer in the meaning of the FLSA and the NYLL and at all times relevant, employed Plaintiff and other similarly situated employees.

**RESPONSE:** Defendants admit the allegations in paragraph 11 of the Complaint.

12.     At all times relevant, Plaintiff was an "employee" of Friends Academy within the meaning of Title VII, the ADA, and the NYSHRL, and thus afforded protection against sexual harassment, discrimination and retaliation.

**RESPONSE:** Defendants admit the allegations in paragraph 12 of the Complaint.

13.     At all times relevant, Plaintiff was an "employee" of Friends Academy within the meaning of the FLSA and the NLL.

**RESPONSE:** Defendants admit the allegations in paragraph 13 of the Complaint.

14.     At all times relevant, Schoeffel was employed by Friends Academy, holding the position of Upper School Principal.

**RESPONSE:** Defendants admit the allegations in paragraph 14 of the Complaint.

15.     At all times relevant, Morris was employed by Friends Academy, holding the title of Head of School.

**RESPONSE:** Defendants admit the allegations in paragraph 15 of the Complaint, except

Defendants deny that Morris was employed as the Head of School after June 30, 2016.

16.     At all times relevant, Kolodner was employed by Friends Academy, holding the title of Dean of Faculty.

**RESPONSE:** Defendants admit the allegations in paragraph 16 of the Complaint.

17.     At all times relevant, Schoman was employed by Friends Academy, holding the title of Associate Head of School.

**RESPONSE:** Defendants admit the allegations in paragraph 17 of the Complaint.

18.     At all times relevant, Kelly was employed by Friends Academy, replacing Morris in his position as Head of School.

**RESPONSE:** Defendants admit the allegations in paragraph 18 of the Complaint, except

Defendants deny that Kelly was employed as the Head of School before July 1, 2016.

19.     At all times relevant, Tidona was employed by Friends Academy, holding the title of Director of Finance.

**RESPONSE:** Defendants admit the allegations in paragraph 19 of the Complaint.

20.     At all times relevant, Wachtler was Vice President of the Board of Trustees of Friends Academy.

**RESPONSE:** Defendants admit the allegations in paragraph 20 of the Complaint, except

Defendants deny that Wachtler served as Vice President of the Board of Trustees prior to 2016.

## BACKGROUND

21.     Plaintiff was hired by Friends Academy as a full-time Upper School English teacher in August 2012.

**RESPONSE:** Defendants admit the allegations in paragraph 21 of the Complaint.

22.     Plaintiff was well regarded by both her students and her peers, and in April 2014, she was promoted to Head of the English Department. Although the title was not effective until August 2014, she immediately began assuming the duties of Department Head.

**RESPONSE:** Defendants admit that Plaintiff began her service as Head of the English

Department in April 2014, but deny as to the remainder of the factual allegations in paragraph 22

of the Complaint.

23.     In March 2015, Schoeffel interviewed for the position of Upper School Principal for Friends Academy. During a group interview of Schoeffel by the Friends Academy Academic Council, only women were present. At the end of the session, Schoeffel said to Plaintiff, "I wonder when I'm going to meet some men around here."

**RESPONSE:** Defendants admit that Schoeffel interviewed for the position of Upper

School Principal in March 2015, but deny as to the remainder of the factual allegations in

paragraph 23 of the Complaint.

24.     After the meeting, Plaintiff reported the comment on an anonymous online feedback form. Shortly thereafter, she verbally reported the comment to Kolodner. Nonetheless, Schoeffel got the job. He started in approximately July 2015.

**RESPONSE:** Defendants admit that Schoeffel began working at Friends Academy as

Upper School Principal in approximately July 2015, but deny as to the remainder of the factual

allegations in paragraph 24 of the Complaint.

25.     In July 2015, Plaintiff had her first professional meeting with Schoeffel to discuss a parent complaint about another teacher. Schoeffel looked Plaintiff up and down in a way that made Plaintiff uncomfortable, and commented on the skirt she was wearing.

**RESPONSE:** Defendants deny the factual allegations in paragraph 25 of the Complaint.

26.     Throughout the 2015/16 year, Schoeffel regularly undermined Plaintiff's position as Head of the English Department by excluding her from department issues, including the

discipline of English teacher Rick Sullivan ("Sullivan") for his repeated policy violations and efforts to sabotage departmental curricula and administration.

**RESPONSE:** Defendants deny the factual allegations in paragraph 26 of the Complaint.

27.     On October 12 and 29, 2015, Plaintiff gave Kolodner, Schoeffel, and Schoeffel's administrative assistant Cathy Philapakos ("Philapakos") verbal notification of an upcoming surgery for the serious health condition of endometrial hypoplasis, including dates of presurgical and post-surgical appointments. On October 19th, Plaintiff also informed Schoeffel in writing of the details of her surgery and the need for class coverage. The information provided was sufficient to identify the situation as Family Medical Leave Act ("FMLA") qualifying. He replied, "We will review this," but never did anything further.

**RESPONSE:** Defendant admits that Plaintiff gave Schoeffel verbal notification of an upcoming surgery on or around October 12 and 29, 2015 and Defendant further admits that Plaintiff gave Schoeffel email notification of her upcoming surgery and need for class coverage on October 19, 2015, but Defendants deny the remainder of the factual allegations in paragraph 27 of the Complaint.  Further, this paragraph contains conclusion of law, to which no response is required.  To the extent a response to such allegations is required, Defendants deny the allegations.

28.     On November 12, 2015, Plaintiff had the hypoplasia surgery. Individual mid-semester student qualitative comments were due on November 13th for grades 11 and 12.  Plaintiff could not meet the deadline for one of her grade 12 classes due to her illness and the surgery. Schoeffel was aware that Plaintiffs doctor had said her recovery would take two weeks, but he did not accommodate or investigate her FMLA needs.

**RESPONSE:** Defendants deny sufficient knowledge or information to admit or deny the allegation that Plaintiff had surgery on November 12, 2015.  Defendants admit that student comments were due on November 13, 2015 for 11th and 12th grade students and that Plaintiff did not meet that deadline.  Defendants deny the remainder of the factual allegations in paragraph 28 of the Complaint.  Further, this paragraph contains conclusion of law, to which no response is required.  To the extent a response to such allegations is required, Defendants deny the allegations.

29.     Between November 16, 2015 and December 9, 2015, Plaintiff had separate meetings with Morris and Kolodner in which she detailed Schoeffel's mistreatment of her, of

Philapakos and of another administrative staff member, Sharon LaPointe. Morris and Kolodner did not take any action on Plaintiffs complaints.

**RESPONSE:** Defendants deny the factual allegations in paragraph 29 of the Complaint.

30.     Schoeffel met with Plaintiff on December 11, 2015, after receiving a complaint about the late submission of mid-semester comments for one of her 12th grade classes from a Board of Trustees member, Wachtler. Schoeffel yelled at, cursed at, mocked, and demeaned Plaintiff, directly threatened her job both as Head of English and as a teacher, and questioned her fitness for her chosen profession of more than 25 years. He never spoke to male employees in this way.

**RESPONSE:** Defendants admit that Schoeffel met with Plaintiff in December 2015 to

discuss complaints received about Plaintiff's late submission of comments.  Defendants deny the

remainder of the factual allegations in paragraph 30 of the Complaint.

31.     In this same meeting, Schoeffel removed Plaintiff without cause from the Integrity Project, a project which she had been entrusted and paid in part by Friends Academy since 2014 to lead.

**RESPONSE:** Defendants deny the factual allegations in paragraph 31 of the Complaint.

32.     Saying that the Head of School and others had done "a disservice" to her, "to Friends Academy's students, and to the other English teachers" by appointing her as Head of her department, Schoeffel informed Plaintiff that she needed to announce her decision to step away from the position as soon as possible. Plaintiff complied out of fear of further harassment.

**RESPONSE:** Defendants deny the factual allegations in paragraph 32 of the Complaint.

33.     After this meeting, in conversations with others, Schoeffel characterized Plaintiffs sudden, unexplained dismissal from the Integrity Project, as well as her removal as Head of English, as Plaintiff's decisions.

**RESPONSE:** Defendants deny the factual allegations in paragraph 33 of the Complaint.

34.     On January 10, 2016, Plaintiff made a formal, written internal complaint to Morris about gender-based harassment from Schoeffel. Plaintiff detailed how she had been singled out and discriminated against by Schoeffel. Plaintiff met with Morris that same day. She expressed that Schoeffel had a problem with women, including her, and that he displayed a worrying level of emotional volatility around women.

**RESPONSE:** Defendants admit that Plaintiff provided Morris with written correspondence on January 10, 2016, but deny the remaining factual allegations in paragraph 34 of the Complaint.

35.     Rather than investigate and address Plaintiff's Claims himself, Morris set up a meeting between Plaintiff and Schoeffel for January 15, 2016. Plaintiff was forced to directly confront Schoeffel. Morris sat virtually silent and did nothing, even as Schoeffel exhibited dismissive, confrontational behavior, threatening Plaintiffs job and expressing contempt for her qualifications and fitness as an educator.

**RESPONSE:** Defendants admit that Morris, Schoeffel, and Plaintiff met on January 15, 2016, but deny the remaining factual allegations in paragraph 35 of the Complaint.

36.     Schoeffel continued his harassment and Plaintiff continued to complain to Morris and Kolodner throughout the Spring, asking for an investigation. She heard nothing in response.

**RESPONSE:** Defendants deny the factual allegations in paragraph 36 of the Complaint.

37.     On May 25, 2016, Sullivan missed a class. Plaintiff informed him that she had covered the class, and she intended to inform Schoeffel. Sullivan responded, among other discriminatory and demeaning things, "Everybody knows you only got the job [as Head of English] because you have nice tits." That same day, Plaintiff sent an email to Schoeffel and Morris regarding Sullivan's pattern of absences necessitating class coverage on her part. She reiterated complaints she had made previously regarding Sullivan's criticisms of her and frequent outbursts.

**RESPONSE:** Defendants admit that Plaintiff sent Schoeffel an email on May 25, 2016 reporting the absence, but deny the remaining factual allegations in paragraph 37 of the Complaint.

38.     Schoeffel replied attacking Plaintiff for failing to report Sullivan's behavior sooner. That afternoon, Plaintiff informed Schoeffel about Sullivan's "tits" comment. Once Plaintiff said no one else was present for Sullivan's comments about Plaintiff's "tits," Schoeffel refused to address it. Instead of assisting Plaintiff, he reprimanded her for "overreacting." No action was taken against Sullivan.

**RESPONSE:** Defendants deny the factual allegations in paragraph 38 of the Complaint, except Defendants deny sufficient knowledge or information to admit or deny the allegation that "[n]o action was taken against Sullivan" because that allegation is too vague as to "action" and the identity of the person or entity who is alleged to have foregone such "action."

39.     Having heard nothing from any of the various personnel on her continued complaints of harassment and discrimination, Plaintiff emailed Morris on June 9, 2016 requesting again that her complaints be investigated. She noted that she had not received any evaluations in the school year. Schoeffel had observed the other English teachers, in most cases multiple times. In fact, Plaintiff never received any evaluations after March 18, 2014, although the Friends Academy handbook provides that teachers are to be evaluated through observations.

**RESPONSE:** Defendant admits that Plaintiff emailed Morris in June 2016, in which email she complained about, among other things, purported harassment and discrimination.  Defendant denies the remaining factual allegations of paragraph 39 of the Complaint.

40.     The next morning, Schoeffel appeared unannounced in an agitated state outside a department meeting Plaintiff was conducting on another part of the campus. He escorted her to his office for a suddenly-mandatory one-on-one meeting about setting 2016/17 departmental teaching schedules. Plaintiff asked for Kolodner to be present. Schoeffel behaved in a volatile, irrational manner, again something he never did with male teachers. At the end of the meeting, Plaintiff again stated to both Schoeffel and Kolodher that she considered Schoeffel's treatment of and behavior toward her to constitute discrimination and harassment, and asked for it to stop.

**RESPONSE:** Defendants deny the factual allegations in paragraph 40 of the Complaint.

41.     Later that day, Plaintiff once again asked Morris to investigate her claim of harassment and discrimination against Schoeffel, as he had done absolutely nothing in response to her formal request six months earlier. Plaintiff had made it clear that she would resign as Head of English on the explicit condition that Morris formally acknowledge that Schoeffel had forced her out, investigate her claim, and that she be protected from ongoing harassment by Schoeffel. Because this never happened and Schoeffel's harassment continued unchecked, Plaintiff withdrew her resignation. She again asked for an investigation. Morris warned Plaintiff that they would investigate her instead of Schoeffel, but ultimately agreed to email the English Department that Plaintiff would stay on as its Head.

**RESPONSE:** Defendants admit that Morris and Plaintiff met in June 2016, and that Plaintiff further corresponded with Morris in June 2016, but deny the remaining factual allegations in paragraph 41 of the Complaint.

42.     Friends Academy later stated it would hire an outside law firm to conduct an investigation.

**RESPONSE:** Defendants deny the factual allegations in paragraph 42 of the Complaint, and Defendants aver that it hired a third-party investigation firm to investigate Plaintiff's allegations.

43. In late June 2016, Wachtler met with Kelly, who had replaced Morris as Head of the School. She made false statements and damaging claims, attacking Plaintiff's teaching ability and integrity. At the time of her meeting with Kelly, Wachtler had no children in the school. Her only intention in making the false claims was to try to help Friends Academy avoid liability for the actions of Morris, Schoeffel, and Sullivan in the 2015/16 school year.

**RESPONSE:** Defendants deny the factual allegations in paragraph 43 of the Complaint.

44. That summer, Friends Academy removed Plaintiff from the summer curriculum grant to develop a senior seminar in Comedy, a further professional and economic loss.

**RESPONSE:** Defendants deny the factual allegations in paragraph 44 of the Complaint.

45. On July 5, 2016, Plaintiff filed an EEOC charge. She withdrew the charge after finally hearing from the third-party investigator hired by Friends Academy, hoping her complaints would actually be addressed. In the beginning of the 2016/17 year, she was interviewed for a total of 7 hours over 2 days. Plaintiff and Christine Kulke, Head of History, had asked that Philapakos be interviewed as she was also familiar with Schoeffel's discriminatory behavior, but it was not done.

**RESPONSE:** Defendants admit that Plaintiff was interviewed by a third-party investigator in the beginning of the 2016/2017 school year. Defendants are without sufficient knowledge or information to admit or deny the remainder of the factual allegations in paragraph 45 of the Complaint.

46. Plaintiff had her first banding meeting on September 26, 2016 and subsequently prepared her banding self-evaluation document, the first draft of which she submitted on October 16, 2016. "Banding" is similar to tenure, and is accompanied by a $1,000 increase in salary. This process should take six weeks to complete after submission of the self-evaluation document. Friends Academy extended the process by requiring Plaintiff to draft and redraft her self-evaluation documents, far and above what other teachers had to do. Friends Academy did not even form a banding committee until June 2017. At a June 9, 2017 meeting, the committee made plans to move forward over the summer and into the 2017-18 academic year. But by that time, Plaintiff had been illegally fired.

**RESPONSE:** Defendants deny the factual allegations in paragraph 46 of the Complaint.

47.     Kolodner refused to pay grants Plaintiff had applied for (which the administration had approved) and misrepresented English Department matters.

**RESPONSE:** Defendants deny the factual allegations in paragraph 47 of the Complaint.

48.     Plaintiff asked to meet with Kelly in September 2016 to discuss her complaints against Schoeffel. Kelly refused.

**RESPONSE:** Defendants deny the factual allegations in paragraph 48 of the Complaint.

49.     On December 2, 2016, Kelly met with Plaintiff for the first time and removed Plaintiff as Head of English. Kelly said Plaintiff had to say the demotion was Plaintiff's idea, but Plaintiff refused.

**RESPONSE:** Defendants admit that the English Department Head duties were removed from Plaintiff's responsibilities in December 2016, but deny the remaining factual allegations in paragraph 49 of the Complaint.

50.     On December 7, 2016, Kelly called a department meeting for the following day. Kelly announced Plaintiff's demotion at the meeting held at the end of the school day, right before parent-teacher conferences, and on Plaintiff's birthday.

**RESPONSE:** Defendants admit that Kelly announced Plaintiff would no longer be serving as English Department Head in a department meeting on December 7, 2016, but deny the remaining factual allegations in paragraph 50 of the Complaint.

51.     Adding insult to injury, Kelly emailed all English Department teachers except Plaintiff on December 19, 2016 about the next Department Head.

**RESPONSE:** Defendants deny the factual allegations in paragraph 51 of the Complaint.

52.     Geoffrey Nelson ("Nelson"), a male, was made the new Department Head. He was far less qualified than Plaintiff. At the time of his promotion, Nelson had only a Bachelor's degree in History. He did not have any degree in literature. By contrast, Plaintiff had a doctorate in drama/literature.

**RESPONSE:** Defendants admit the factual allegations in paragraph 52 of the Complaint, except Defendants deny the allegation that the Department Head position constituted a promotion or that Geoffrey Nelson was far less qualified than Plaintiff for the Department Head position.

53.     Kelly then tried to retroactively justify Plaintiff's demotion. She conjured up performance issues and threatened Plaintiff's job.

**RESPONSE:** Defendants deny the factual allegations in paragraph 53 of the Complaint.

54.     Plaintiff responded verbally and in writing, but Friends Academy refused to investigate. Plaintiff went back to the EEOC and filed a second charge. Thereafter, Kelly requested a meeting with Plaintiff to discuss transitioning the department, and scheduled an annual goals meeting for Plaintiff. After Plaintiff requested Quaker-in-Residence John Scardina's attendance at the goals meeting to protect her against further discrimination and retaliation, Kelly withdrew her offer to meet. Instead, Kelly proposed placing Plaintiff on a performance plan. Although Plaintiff agreed to participate, she considered it further retaliation and let Kelly know. Only then did Kelly withdraw the plan.

**RESPONSE:** Defendants admit that Plaintiff filed a second charge with the EEOC, that Kelly proposed placing Plaintiff on a performance plan, and that Plaintiff requested John Scardina attend a meeting between Plaintiff and Kelly.  Defendants deny the remaining factual allegations in paragraph 54 of the Complaint.

55.     The following month, Tidona informed Plaintiff that the investigation had finally closed and found no evidence of wrongdoing by Schoeffel. Tidona asked Plaintiff to report any future incidents of harassment directly to her. Although numerous others could have been Plaintiff's supervisor, Friends Academy did not remove Schoeffel as her supervisor, so that they would continue to have daily contact.

**RESPONSE:** Defendants admit the allegations in paragraph 55 of the Complaint, except Defendants deny the allegation that "numerous others" could have been Plaintiff's supervisor.

56.     In March 2017, Kelly sent Plaintiff a contract for the upcoming school year, including in her cover letter false performance-related allegations that Kelly had never discussed with Plaintiff, and threatening Plaintiff s employment.

**RESPONSE:** Defendants admit that Kelly sent Plaintiff a contract for the upcoming school year in March 2017, and included a cover letter.  Defendants deny the remaining allegations in paragraph 56 of the Complaint.

57.     The EEOC did not investigate Plaintiff's second charge, and on April 12, 2017 it issued a Dismissal and Notice of Right to Sue.

**RESPONSE:** Defendants admit that the EEOC a Dismissal and Notice of Right to Sue on April 12, 2017 with respect to Plaintiff's second charge, but Defendants lack sufficient knowledge or information to admit or deny the remaining factual allegations in paragraph 57.

58.     Plaintiff filed a third charge for retaliation on April 17, 2017.

**RESPONSE:** Defendants admit the factual allegations in paragraph 58 of the Complaint, but Defendants deny any allegation that they illegally retaliated against Plaintiff.

59.     In an email to Kolodner on May 4, 2017, Plaintiff asked that a plan be put in place so that she was not subjected to further harassment by Schoeffel. Nothing was done.

**RESPONSE:** Defendants deny the factual allegations in paragraph 59 of the Complaint.

60.     Plaintiff reiterated Schoeffel's retaliation at her annual end-of-year goals meeting. Tidona claimed she investigated even though she did not meet with Plaintiff, and instead of offering any advice or protections, concluded "We are going to have to agree to disagree."

**RESPONSE:** Defendants deny the factual allegations in paragraph 60 of the Complaint.

61.     Kelly continued to retaliate against Plaintiff, writing her up in June 2017 for failing to get "grade reports" to students, even though Plaintiff was on jury duty and a "grade report" was a voluntary service that Plaintiff provided to give her students an idea of how they were doing before taking the final exam. When the parents of one of the students met with Plaintiff about not receiving the grade report, Plaintiff explained that the student had not emailed Plaintiff or asked for extra help as instructed. Instead of supporting Plaintiff, Kelly attacked her for her response. After Plaintiff pushed back, Kelly retaliated and terminated Plaintiff's employment.

**RESPONSE:** Defendants admit that Kelly spoke with Plaintiff regarding a complaint that Plaintiff had not submitted grade reports, and that Kelly facilitated a meeting with Plaintiff and the student's parents, during which Plaintiff blamed the student.  Defendants further admit that Kelly advised Plaintiff that Defendant Friends Academy had decided not to renew Plaintiff's employment for the upcoming school year.  Defendants deny the remaining factual allegations in paragraph 61 of the Complaint.

62.     Plaintiff's son was a 6th grade student at Friends Academy at the time of her unlawful termination. His tuition had been significantly reduced as part of Plaintiffs compensation. Friends Academy offered to extend the tuition reduction for only one year, and only if Plaintiff

signed an agreement not to bring claims such as those brought in this action, even though it knew Plaintiff had filed a claim with the EEOC. Since Plaintiff's son would then have to transfer to a different school in his last year of middle school, and Plaintiff would not be able to assert her rights in this lawsuit, she could not sign the agreement. Plaintiff's son was thus forced to leave his friends and the staff he had been with for seven years, and start at a new school with little to no notice.

**RESPONSE:** Defendants admit that Plaintiff's son was a student at Friends Academy, that he was receiving tuition remission, and that Friends Academy conducted settlement negotiations with Plaintiff, which included an extension of tuition reduction in exchange for a release of claims. Defendants further admit that Plaintiff rejected all of Friends Academy's settlement offers. Defendants deny the remaining factual allegations in paragraph 62 of the Complaint.

63. Plaintiff's teaching position was filled by Joseph Herceg, who was a less qualified male. He had a Master's degree, whereas Plaintiff has a Doctorate. He also had far less teaching experience than Plaintiff.

**RESPONSE:** Defendants admit the factual allegations in paragraph 63 of the Complaint, except Defendants deny the allegations that Joseph Herceg was less qualified than Plaintiff or that he had far less teaching experience.

### FIRST CLAIM
### ALLEGED RETALIATION UNDER TITLE VII
**(Against Friends Academy Only)**

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

**RESPONSE:** Defendants incorporate and re-allege their prior responses as though set forth herein.

65. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

**RESPONSE:** Defendants admit the allegations of fact in paragraph 65 of the Complaint.

66.     Plaintiff complained on numerous occasions, both in writing and verbally, about Defendants' discriminatory treatment.

**RESPONSE:** Defendants deny any allegation that they discriminated against Plaintiff. Defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 66 of the Complaint because the reference to "numerous occasions" is too vague.  To the extent a response is required, Defendants deny the allegations in paragraph 66 of the Complaint.

67.     Plaintiff filed three separate EEOC claims against Friends Academy.

**RESPONSE:**  Defendants admit the allegations in paragraph 67 of the Complaint.

68.     Friends Academy was aware of all three EEOC claims.

**RESPONSE:**  Defendants admit the allegations in paragraph 68 of the Complaint.

69.     Within one year of the first charge and six weeks of her third charge, Plaintiff was subject to numerous adverse actions, in that Defendants *inter alia,* demoted Plaintiff from her position as Head of English, took away the Integrity Project, took her off the Comedy project, delayed her banding process, gave her unwarranted negative feedback and reviews, tried to get her on an unnecessary improvement plan, and terminated her.

**RESPONSE:** This paragraph contains conclusions of law to the extent it alleges the employment actions referenced therein constituted "adverse actions" for purposes of Plaintiff's retaliation claim.   As such, no response is required.   To the extent a response is required, Defendants deny the allegations in paragraph 69 of the Complaint.

70.     Friends Academy engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e, *et seq.,* by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 70 of the Complaint.

71.     By engaging in the foregoing conduct, Friends Academy acted with malice and/or reckless disregard for Plaintiff's rights under Title VII.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 71 of the Complaint.

72.     As a result of Friends Academy's retaliation, Plaintiff suffered severe emotional distress, loss of enjoyment of life, lost wages and other damages.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 72 of the Complaint.

73.     Plaintiff was damaged in an amount that exceeds any jurisdictional requirements of the Court, which will be determined at trial, and Plaintiff is entitled to punitive damages and attorneys' fees and costs.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 73 of the Complaint.

**SECOND CLAIM**
**ALLEGED RETALIATION**
**UNDER THE NEW YORK STATE EXECUTIVE LAW**
**(Against All Defendants)**

74.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

**RESPONSE:** Defendants incorporate and re-allege their prior responses as though set forth herein.

75.     New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

**RESPONSE:** Defendants admit the allegations of fact in paragraph 75 of the Complaint.

76.     Plaintiff complained to Defendants about their discriminatory treatment of her on numerous occasions, both in writing and verbally.

**RESPONSE:** Defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 76 of the Complaint because the reference to "numerous occasions" is too vague.  To the extent a response is required, Defendants deny the allegations in paragraph 76 of the Complaint.

77.     Because Plaintiff complained about Defendants' discriminatory treatment, Defendants retaliated against her by, among other things, creating a hostile work environment, making offensive comments, deliberately mischaracterizing her work performance, demoting her, removing her from projects, excluding her, and treating her in a disparate fashion as compared to those who did not complain about the discrimination.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 77 of the Complaint.

78.     Defendants engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of her opposition to the unlawful employment practices of Defendants.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 78 of the Complaint.

79.     Defendants' conduct as alleged herein constitute violations of New York State Human Rights Law § 296.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 79 of the Complaint.

80.     By engaging in the foregoing conduct, Defendants acted with malice and/or reckless disregard for Plaintiff's rights under New York State Human Rights Law § 296.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 80 of the Complaint.

81.    As a result of Defendants' retaliation, Plaintiff suffered severe emotional distress, loss of enjoyment of life, lost wages and other damages.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 81 of the Complaint.

**THIRD CLAIM**
**ALLEGED HOSTILE AND ABUSIVE WORKING**
**ENVIRONMENT IN VIOLATION OF TITLE VII**
**(Against Friends Academy only)**

82.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

**RESPONSE:** Defendants incorporate and re-allege their prior responses as though set forth herein.

83.    Plaintiff is a member of a protected class in that she is female.

**RESPONSE:** Defendants admit the allegations of fact in paragraph 83 of the Complaint.

84.    Plaintiff was subjected to inappropriate comments about women, treated differently than her male colleagues, and targeted by Defendants, all because she was female.

**RESPONSE:** Defendants deny the allegations of fact in paragraph 84 of the Complaint.

85.    Plaintiff suffered adverse action as a result of her complaints about the sexual harassment and discrimination, in that Defendants *inter alia* demoted Plaintiff from her position as Head of English, took away the Integrity Project, took her off the Comedy project, delayed her banding process, gave her unwarranted negative feedback and reviews, tried to get her on an unnecessary improvement plan, and terminated her.

**RESPONSE:** This paragraph contains conclusions of law to the extent it alleges the employment actions referenced therein constituted "adverse actions" for purposes of Plaintiff's

retaliation claim.   As such, no response is required.   To the extent a response is required, Defendants deny the allegations in paragraph 85 of the Complaint.

86.     The position of Head of English was given to a less qualified male.

**RESPONSE:** Defendants deny the allegations of fact in paragraph 86 of the Complaint.

87.     Plaintiff was replaced by a less qualified male in her teaching position.

**RESPONSE:** Defendants deny the allegations of fact in paragraph 87 of the Complaint.

88.     The conduct of Friends Academy as alleged herein subjected Plaintiff to a hostile work environment in violation of Title VII.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 88 of the Complaint.

89.     By engaging in the foregoing conduct, Friends Academy acted with malice and/or with reckless disregard for Plaintiff s rights under Title VII.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 89 of the Complaint.

90.     As a result of the harassment and hostile working environment, Plaintiff suffered severe emotional distress, loss of enjoyment of life, lost wages and other damages.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 90 of the Complaint.

91.     Plaintiff was damaged in an amount that exceeds any jurisdictional requirement of the Court, which will be determined at trial, and Plaintiff is entitled to punitive damages and attorneys' fees and costs.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 91 of the Complaint.

## FOURTH CLAIM
### ALLEGED HOSTILE AND ABUSIVE WORKING ENVIRONMENT
### UNDER THE NEW YORK STATE EXECUTIVE LAW
### (Against All Defendants)

92.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

**RESPONSE:** Defendants incorporate and re-allege their prior responses as though set forth herein.

93.    Executive Law § 296 provides that it is unlawful discriminatory practice for an employer to discriminate against an employee because of her gender.

**RESPONSE:** Defendants admit the allegations of fact in paragraph 93 of the Complaint.

94.    Plaintiff is a member of a protected class in that she is female.

**RESPONSE:** Defendants admit the allegations of fact in paragraph 94 of the Complaint.

95.    Plaintiff was subjected to inappropriate comments about women, treated differently than her male colleagues, and targeted by Defendants, all because she was female.

**RESPONSE:** Defendants deny the allegations of fact in paragraph 95 of the Complaint.

96.    Plaintiff suffered adverse action as a result of her complaints about the sexual harassment and discrimination, in that Defendants *inter alia* demoted Plaintiff from her position as Head of English, took away the Integrity Project, took her off the Comedy project, delayed her banding process, gave her unwarranted negative feedback and reviews, tried to get her on an unnecessary improvement plan, and terminated her.

**RESPONSE:** This paragraph contains conclusions of law to the extent it alleges the employment actions referenced therein constituted "adverse actions" for purposes of Plaintiff's retaliation claim. As such, no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 96 of the Complaint.

97.     The position of Head of English was given to a less qualified male.

**RESPONSE:** Defendants deny the allegations of fact in paragraph 97 of the Complaint.

98.     Plaintiff was replaced by a less qualified male in her teaching position.

**RESPONSE:** Defendants deny the allegations of fact in paragraph 98 of the Complaint.

99.     The conduct of Defendants, as alleged above, constitutes sexual harassment and sex discrimination in violation of Executive Law § 296 by, among other things, creating a hostile work environment for Plaintiff and discriminating against Plaintiff based on her gender.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 99 of the Complaint.

100.    As a result of the harassment and hostile working environment, Plaintiff suffered severe emotional distress, loss of enjoyment of life, lost wages and other damages.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 100 of the Complaint.

101.    Plaintiff was damaged in an amount that exceeds any jurisdictional requirements of the Court, which will be determined at trial, and Plaintiff is entitled to attorneys' fees and costs.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 101 of the Complaint.

**FIFTH CLAIM**
**ALLEGED AIDING AND ABETTING DISCRIMINATION**
**UNDER THE NEW YORK STATE EXECUTIVE LAW**
**(Against all Defendants)**

102.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

**RESPONSE:** Defendants incorporate and re-allege their prior responses as though set forth herein.

103.   New York State Executive Law § 296(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel, or coerce the doing of any acts forbidden under this article, or attempt to do so."

**RESPONSE:** Defendants admit the allegations of fact in paragraph 103 of the Complaint.

104.   Defendants violated New York State Executive Law § 296(6) because their actions as detailed above aided and abetted the discriminatory, harassing and unlawful conduct committed against Plaintiff.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 104 of the Complaint.

105.   As a result of Defendants' actions, Plaintiff suffered severe emotional distress, loss of enjoyment of life, lost wages and other damages.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 105 of the Complaint.

### SIXTH CLAIM
### ALLEGED VIOLATIONS OF FEDERAL LABOR LAWS
### (Against Friends Academy)

106.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

**RESPONSE:** Defendants incorporate and re-allege their prior responses as though set forth herein.

107.   Plaintiff worked on grants for the Integrity Initiative and for course development for a new senior elective on Comedy and Literature.

**RESPONSE:** Defendants deny the allegations of fact in paragraph 107 of the Complaint.

108.   Funds were allocated to the grants.

**RESPONSE:** Defendants deny sufficient knowledge or information to admit or deny the allegations of fact in paragraph 108 of the Complaint because the allegations therein are too vague. To the extent a response is required, Friends Academy denies the factual allegations in paragraph 108 of the Complaint.

109.    Plaintiff supplied documentation demonstrating that the work was done.

**RESPONSE:** Defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 109 of the Complaint because the reference to "documentation" and "work" is too vague.  To the extent a response is required, Defendants deny the allegations in paragraph 109 of the Complaint.

110.    Defendants refused to pay Plaintiff for work performed on the grants.

**RESPONSE:** Defendants deny the factual allegations in paragraph 110 of the Complaint.

111.    As a result of Friends Academy's failure to pay wages earned and due to Plaintiff, Friends Academy deprived Plaintiff of full and timely payment under the law in violation of the Federal Labor Laws.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 111 of the Complaint.

112.    Pursuant to the Federal labor laws, Plaintiff seeks damages in the amount of the unpaid wages earned and due, liquidated damages, prejudgment interest, penalties, and attorneys' fees and costs.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 112 of the Complaint.

**SEVENTH CLAIM**
**ALLEGED VIOLATIONS OF STATE LABOR LAWS**
**(Against Friends Academy)**

113.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

**RESPONSE:** Defendants incorporate and re-allege their prior responses as though set forth herein.

114.    Plaintiff worked on grants for the Integrity Initiative and for course development for a new senior elective on Comedy and Literature.

**RESPONSE:** Defendants deny the factual allegations in paragraph 114 of the Complaint.

115.    Funds were allocated to the grants.

**RESPONSE:** Defendants deny sufficient knowledge or information to admit or deny the allegations of fact in paragraph 115 of the Complaint because the allegations therein are too vague. To the extent a response is required, Friends Academy denies the factual allegations in paragraph 115 of the Complaint.

116.    Plaintiff supplied documentation demonstrating that the work was done.

**RESPONSE:** Defendants are without sufficient knowledge or information to admit or deny the allegations in paragraph 116 of the Complaint because the reference to "documentation" and "work" is too vague.  To the extent a response is required, Defendants deny the allegations in paragraph 116 of the Complaint.

117.    Friends Academy refused to pay Plaintiff for work performed on the grants.

**RESPONSE:** Defendants deny the factual allegations in paragraph 117 of the Complaint.

118.    As a result of Friends Academy's failure to pay wages earned and due to Plaintiff, Friends Academy deprived Plaintiff of full and timely payment under the law in violation of the New York Labor Laws.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 118 of the Complaint.

119.    Pursuant to NYLL § 198(1) and 650, *et seq.,* Plaintiff seeks damages in the amount of the unpaid wages earned and due, liquidated damages, prejudgment interest, penalties, and attorneys' fees and costs.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 119 of the Complaint.

### EIGHTH CLAIM
### ALLEGED INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

120.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

**RESPONSE:** Defendants incorporate and re-allege their prior responses as though set forth herein.

121.    Defendants deliberately and purposefully harassed and discriminated against Plaintiff because of her sex.

**RESPONSE:** This paragraph contains conclusions of law, to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 121 of the Complaint.

122.    Defendants purposely attempted to upset, humiliate and embarrass Plaintiff to force her to end her career as a teacher.

**RESPONSE:** Defendants deny the allegations of fact in paragraph 122 of the Complaint.

123.    For malicious and illegal reasons, Defendants attempted to end the teaching career of Plaintiff.

**RESPONSE:** Defendants deny the allegations of fact in paragraph 123 of the Complaint.

124.    As described above, the conduct of Defendants was outrageous and must not be tolerated in a civilized society.

**RESPONSE:** Defendants deny the allegations of fact in paragraph 124 of the Complaint.

125.    As a result of that conduct, Plaintiff suffered extreme emotional distress and physical illnesses and manifestations as a result of that emotional distress.

**RESPONSE:** Defendants deny the allegations of fact in paragraph 125 of the Complaint.

## DEMAND FOR JURY TRIAL

126.    Plaintiff demands a trial by jury on all issues in this action.

**RESPONSE:** Defendants admit that Plaintiff has demanded a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants:

A.    Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, and the New York State Executive Law, in that Defendants discriminated against her based on her gender, retaliated against her for objecting to gender discrimination and sexual harassment, and aided and abetted such discrimination and retaliation;

B.    Awarding damages to Plaintiff resulting from Defendants' unlawful actions and to otherwise make her whole for· any losses suffered as a result of such unlawful employment practices;

C.    Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D.    Awarding Plaintiff unpaid wages;

E.    Awarding Plaintiff punitive damages;

F.    Awarding Plaintiff costs and liquidated damages;

G.    Awarding Plaintiff attorneys' fees, and expenses incurred in the prosecution of this action; and

H.    Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper.

**RESPONSE:** Defendants deny that Plaintiff is entitled to any of the relief set forth in the unnumbered "Wherefore" paragraph, including sub-paragraphs (A) through (H), directly following Paragraph 126 of the Complaint.

## DEFENSES

Defendants assert the following defenses without assuming any burden of proof they would not otherwise have under applicable law.   In addition, each of the foregoing responses to the numbered paragraphs in the Complaint are incorporated by reference within each of the defenses set forth below.

## AND AS FOR A FIRST DEFENSE

The Complaint is barred, in whole or in part, because some or all of the allegations fail to state a claim against Defendants for which relief may be granted.

## AND AS FOR A SECOND DEFENSE

The Complaint is barred, in whole or in part, by the applicable statute of limitations.

## AND AS FOR A THIRD DEFENSE

The Complaint is barred, in whole or in part, by Plaintiff's failure to exhaust administrative remedies.

## AND AS FOR A FOURTH DEFENSE

The Complaint is barred in whole or in part because, at all times relevant to the action, Defendants acted in good faith and complied with all applicable contracts, covenants, laws, rules, regulations, standards, and statutes.

## AND AS FOR A FIFTH DEFENSE

The Complaint is barred in whole or in part because Defendants terminated Plaintiff's employment for legitimate, non-discriminatory reasons and/or for good cause unrelated to Plaintiff's alleged protected activities.

## AND AS FOR A SIXTH DEFENSE

Even assuming *arguendo* that Defendants or their agents engaged in any of the unlawful acts alleged in the Complaint, which Defendants vehemently deny, the Complaint is barred in whole or in part because Defendants exercised reasonable care to prevent and correct any discriminatory or retaliatory conduct and Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities or to avoid harm otherwise.

## AND AS FOR A SEVENTH DEFENSE

Even assuming *arguendo* that Defendants or their agents engaged in any of the unlawful acts alleged in the Complaint, which Defendants vehemently deny, Plaintiff is not entitled to punitive damages under one or more causes of action as a matter of law and separately because Defendants or their agents never engaged in any of the unlawful acts alleged in the Complaint intentionally, with malice, or with reckless indifference to Plaintiff's rights.

## AND AS FOR AN EIGHTH DEFENSE

The Complaint is time-barred to the extent Plaintiff seeks damages for events related to or arising from the same or similar allegations of fact set forth in her first two EEOC charges filed against Defendant Friends Academy (Charge Nos. 846-2016-29786 and 520-2017-00738) because Plaintiff failed to commence a civil action within 90 days of receiving a Notice of Right to Sue Letter for both charges.

## AND AS FOR A NINTH DEFENSE

At all relevant times, Defendants had established and complied with policies and procedures for the detection, prevention and remediation of unlawful employment practices.

## AND AS FOR A TENTH DEFENSE

The Complaint is barred, in part, because the Plaintiff was exempt from the minimum wage and/or overtime requirements of the Fair Labor Standards Act.

## AND AS FOR AN ELEVENTH DEFENSE

The Complaint is barred, in whole or in part, because and upon information and belief, Plaintiff has failed to mitigate her alleged damages.

## AND AS FOR A TWELFTH DEFENSE

The Complaint is barred, in whole or in part, because of the doctrine of unclean hands.

## AND AS FOR A THIRTEENTH DEFENSE

The Complaint is barred, in whole or in part, because of the doctrine of laches, waiver, and/or estoppel.

## RESERVATION OF RIGHTS

Defendants reserve the right to amend their defenses within this Answer in the event new information is learned during the course of this action and as otherwise permitted by law.

Dated: January 25, 2019
New York, New York

/s/ Nicholas M. Reiter
Nicholas M. Reiter
VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Tel: (212) 307-5500
Fax: (212) 307-5598
nmreiter@venable.com

*Attorneys for Defendants Friends Academy Mark Schoeffel, William Morris, Mary Alice Kolodner, Deborah Schoman, Andrea Kelly, Ann Marie Tidona, and Robin Wilpon Wachtler*